UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN STANLEY HAZEL,

      Plaintiff,                        Case No. 09-11384

v.

                                     Honorable Patrick J. Duggan

ARNOLD HENRY KEGEBEIN, IRIS M.
LOPEZ, and the STATE OF MICHIGAN,

      Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on August 11, 2009.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Dean Stanley Hazel ("Plaintiff") filed this *pro se* civil rights complaint on April 13, 2009, alleging violations of his First, Fifth, and Fourteenth Amendment rights by Arnold Kegebein, Iris Lopez, and the State of Michigan (collectively "defendants"). Plaintiff has been granted leave to proceed without prepayment of the filing fee and costs for this action. Presently before the Court is a Motion to Dismiss from the State of Michigan and Lopez, as well as a Motion for an Extension of Time for Service by Plaintiff. The motion to dismiss has been fully briefed and, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court dispensed with oral argument on July 17, 2009. For the reasons set forth below, the Court grants the motion to dismiss, denies the motion to extend time for service, and dismisses the complaint.

**I. Facts and Procedural Background**

The present action derives from Plaintiff's belief that the United States Constitution bars states from making anything but gold and silver coins as tender for debts. To challenge the current state of affairs in regard to this issue, Plaintiff has been attempting to pay for his Michigan driver's license and vehicle registration renewals through various mediums including un-coined silver and personal notes (two-party, non-commercial instruments) since 1979. In that year, Plaintiff's actions, along with the actions of other like-minded individuals, resulted in the initiation of two civil suits in Michigan state courts. Both suits, however, were dismissed with prejudice. In 1982 Plaintiff attempted to re-initiate litigation by again paying for his driver's license and vehicle registration renewals with a personal note. This action did not ultimately result in litigation because the State of Michigan never presented the note for payment.

Undeterred by the prior events, Plaintiff tendered yet another personal note as partial payment for his 1997 driver's license and vehicle registration renewals. Defendant Arnold Kegebein, a former employee in the Financial Enforcement Division of the Office of the Michigan Secretary of State, refused to accept the note and accused Plaintiff of tendering a non-negotiable instrument. After failing to submit an otherwise acceptable form of payment, Plaintiff was charged with and convicted of uttering and publishing a false financial transaction device.[1]

───────────────

[1]Plaintiff asserts that, while he served his time for the uttering and publishing conviction, he missed a trial date for an unrelated civil action that he had initiated in 1996

The 1997 conviction did not put an end to the litigation surrounding Plaintiff's driver's license and vehicle registration renewals.  In early 2002, Plaintiff initiated an action for injunctive relief in Michigan state court wherein Plaintiff specifically sought a writ of mandamus ordering the State of Michigan to issue him a valid driver's license. Defendant Lopez, an Assistant Attorney General for the State of Michigan, represented Michigan in this civil action.  Ultimately, Judge Michael LaBeau of the Monroe County Circuit Court issued the writ in Plaintiff's favor, ordering that the Michigan Secretary of State issue Plaintiff a valid driver's license through April 12, 2006.[2]  Plaintiff alleges that, after the court proceeding in which Judge LeBeau issued the writ, Lopez indicated that the litigation "would not stop there."  (Compl. ¶ 18.)  Lopez stated that she would pursue the matter as far as it could go.  Nonetheless, Plaintiff obtained a valid driver's license the same day the writ was issued and the State did not appeal the order.

Four years later, Plaintiff alleges that Lopez's "threats" materialized.  On April 12, 2006, the final day of the writ's enforcement period, Plaintiff was arrested for operating a motor vehicle in Michigan without a valid license.  Plaintiff alleges that Kegebein, acting

_____

regarding improper ballots.  Because Plaintiff failed to appear at the trial, the civil action was allegedly dismissed.  Plaintiff claims to have previously declined a $4.5 million default judgment in that case because he wanted to go to public trial.

[2]For purposes of this motion, the Court assumes that Plaintiff accurately summarized the writ's contents and applicable dates.  The Court notes, however, that Plaintiff did not attach a copy of the writ to his complaint.

3

in conspiracy with Lopez, unlawfully cancelled his driver's license in violation of the writ
of mandamus.  In response to these acts, Plaintiff filed the present suit.

In his April 13, 2009, complaint, Plaintiff presents three claims.  In count I, Plaintiff
alleges that the cancellation of his driver's license in violation of the writ of mandamus
violated his constitutional due process, property, and equal protection rights.  In count II,
Plaintiff alleges a civil rights conspiracy between Kegebein and Lopez to violate the
aforementioned rights by cancelling his driver's license.  In count III, Plaintiff alleges
First Amendment retaliation based on the events that led to the mandamus proceeding.  It
is in the context of this last claim that Plaintiff details his litigation history in Michigan,
placing particular emphasis on his 1997 conviction and Kegebein's role therein.  All three
claims are brought pursuant to 42 U.S.C. § 1983 and, in all three claims, Plaintiff seeks
compensatory and punitive damages along with fees, interest, and costs.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the
legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78
F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a
pleading must contain a "short and plain statement of the claim showing that the pleader
is entitled to relief."  To survive a motion to dismiss, a complaint need not contain
"detailed factual allegations," but it must contain more than "labels and conclusions" or
"a formulaic recitation of the elements of a cause of action . . . ."  *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65 (2007).  A complaint does not

4

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

5

### III. Eleventh Amendment Immunity

The State of Michigan and Lopez argue that Plaintiff's claims are barred, in part, by the Eleventh Amendment. "The Eleventh Amendment generally bars suits by citizens of a state against a state in federal court."[3] *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). Furthermore, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2311 (1989). And while there is "an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities," *Carten v. Kent State University*, 282 F.3d 391, 395 (6th Cir. 2002), there is no similar exception for damages claims. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).

In this case, Plaintiff seeks damages from the State of Michigan and the individual defendants in both their individual and official capacities. Because there is no evidence that Michigan consented to this suit, the Eleventh Amendment bars Plaintiff's claims against the state and Michigan is entitled to dismissal.[4] Furthermore, to the extent that

---

[3]Although the text of the Eleventh Amendment refers explicitly to suits "commenced or prosecuted . . . by Citizens of another State," U.S. Const. amend XI, "the doctrine of sovereign immunity categorically prohibits such suits against a state by one of its own citizens." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007).

[4]Plaintiff opposes this Eleventh Amendment argument by citing to the legal theory regarding municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). This theory, however, does not apply to state governments and entities that

6

Plaintiff seeks damages from Lopez and Kegebein in their official capacities, the
Eleventh Amendment likewise bars his claims.[5]

## IV. Absolute Immunity

In regard to the remaining claims against Lopez in her individual capacity, Lopez
asserts that she is entitled to absolute immunity.  As a general matter, prosecutors are
protected by absolute immunity from civil liability in § 1983 suits.  *See Imbler v.
Pachtman*, 424 U.S. 409, 427-28, 96 S. Ct. 984, 993-94 (1979).  This immunity, which
arises from the need to protect a prosecutor's ability to serve the public diligently and
vigorously, *id.* at 425-28, 96 S. Ct. at 992-94, extends equally to government attorneys
who undertake the defense of a civil suit.  *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229
(6th Cir. July 9, 1990) (citing *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988)).
The only exception to this immunity is when the government attorney "is not acting as 'an
officer of the court,' but is instead engaged in other tasks, say, investigative or
administrative tasks."  *Van de Kamp v. Goldstein*, --- U.S. ---, 129 S. Ct. 855, 861 (2009).

Plaintiff's claims against Lopez arise from Lopez's work as a government attorney
defending against Plaintiff's writ of mandamus action in state court.  Plaintiff specifically
alleges that Lopez violated his rights by stating that she would not stop after the issuance

---

can be considered arms of the state because of the Eleventh Amendment.  *See Alkire v.
Irving*, 330 F.3d 802, 814 (6th Cir. 2003).

[5]Although Defendant Kegebein has not been served and, therefore, is not presently
before the Court, the Eleventh Amendment immunity analysis applies equally to him.
Plaintiff identifies Kegebein as an employee of the Michigan Secretary of State's Office.

of the writ of mandamus—she would pursue the matter as far as it could go.  (Compl. ¶ 18.)  This statement, made in the context of Lopez's representation of the government, is shielded by absolute immunity.[6]  It is irrelevant that Lopez did not actually pursue an appeal in that case.  Lopez is absolutely immune and entitled to dismissal.[7]

## V. Extension of Time to Serve Defendant Kegebein

Upon receiving this Court's July 17, 2009, notice that the Court was dispensing with oral argument, Plaintiff filed a sur-reply to the present motion.  Therein Plaintiff indicates that, during his attempt to effect service, he received notice that Kegebein is now deceased.  As a result, Plaintiff requests more time to perfect process so that he may initiate a state court action to open Kegebein's estate.  Plaintiff also filed a separate

---

[6]This is not to say that the alleged statement, absent absolute immunity, amounted to a violation of Plaintiff's constitutional rights.

[7]In his response, Plaintiff argues that Lopez committed perjury during the writ of mandamus proceeding and that such action is not protected by absolute immunity.  (Pl.'s Resp. at 6-7.)  Specifically, Plaintiff asserts that Lopez committed perjury when she informed the judge in the writ of mandamus proceeding that she had a judgment against Plaintiff that she failed to produce.

As an initial matter, the claims in Plaintiff's complaint are not based on and fail even to allege Lopez's "perjury."  Second, Plaintiff's legal support for this argument refers to instances where government attorneys acted as *witnesses* rather than as advocates.  (*See id.*)  There is no allegation or evidence that Lopez acted as anything other than an advocate in the writ of mandamus proceeding.  And finally, Plaintiff's undeveloped allegation ignores the fact that he, admittedly, has an outstanding criminal conviction related to his attempts to pay for his driver's license and registration renewals with two-party, non-commercial instruments.  (Compl. ¶¶ 63-64, 75, 108-109.)  Based on these facts, the Court is unable to discern any viable cause of action that Plaintiff should be permitted to pursue against Lopez.

motion to this effect on August 7, 2009.  Having reviewed the content of the remaining claims against Kegebein, the Court denies Plaintiff's request and dismisses the complaint.

28 U.S.C. § 1915 requires a court to dismiss a case in which the plaintiff proceeds *in forma pauperis* "at any time if the court determines that . . . (B) the action or appeal– (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32 (1989).  The term "frivolous" "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."  *Id*. at 325, 109 S.Ct. at 1832.  Examples of meritless legal theories are claims in which it is clear that the defendants are immune from suit and claims of infringement of a legal interest which clearly does not exist.  *Id*. at 327, 109 S. C. at 1833. Examples of baseless factual contentions are claims describing fantastic or delusional scenarios. *Id*. at 328, 109 S. Ct. at 1833.

Stripped of their naked legal assertions, the first two counts of Plaintiff's complaint seek enforcement of the writ of mandamus issued in state court.  In his response to the present motion, Plaintiff summarizes those claims as follows:

> [T]he defendants' unlawful activities culminated in the lawless and willful disobeyance of a court order by the defendants, a Writ of Mandamus issued by the Honorable 38th Judicial Circuit Court Judge Michael W. LaBeau on April 19, 2002 and then affirmed by court order on September 15, 2006 after the defendants failed to appear on a show cause order for violating it.  It is for this for which the Plaintiff is suing the defendants

9

named and unnamed herein and is entitled to a jury verdict on the facts
and law.[8]

(Pl.'s Resp. at 2-3.)  According to Plaintiff, Kegebein participated in a civil rights

conspiracy and violated his due process, property, and equal protection rights by

violating the writ of mandamus.  (Compl. ¶¶ 27, 30.)

The Court concludes that the alleged violation of the writ of mandamus fails to give

rise to a federal cause of action.  In support of his claims, Plaintiff refers the Court to *Roy*

*v. City of Augusta, Me.* wherein the First Circuit held that the intentional violation of a

state court order arguably amounts to a taking of property without due process.  712 F.2d

1517, 1523 (1st Cir. 1983).  Five years after *Roy*, however, the First Circuit backpedaled

on that holding and concluded that such alleged violations "could not be said to be

without due process unless no effective state remedy were available."  *Decker v.*

*Hillsborough County Attorney's Office*, 845 F.2d 17, 22 (1st Cir. 1988).  Furthermore,

the Fourth Circuit openly rejected *Roy*'s reasoning when it concluded:

> A state court judgment is something to be enforced through the state's
> judicial process, including its powers of contempt.  Every state court
> judgment does not provide a would-be plaintiff with a cognizable property
> right under 42 U.S.C. § 1983, and every alleged delay in the enforcement
> of the mandate does not provide a plaintiff with a claim of deprivation
> without due process of law.  To hold otherwise would assign the federal
> courts the role of ombudsmen in monitoring the execution of state
> judgments, a role Congress surely did not envision in passing this statute,
> and one that would be destructive of federal-state relations.

---

[8]The first part of the first sentence in this quote summarizes Plaintiff's third claim,
which the Court will address below.

10

*Biser v. Town of Bel Air*, 991 F.2d 100, 105 n.2 (4th Cir. 1993).

Having been unable to locate a Sixth Circuit opinion on these issues, the Court agrees with the Fourth Circuit.  There is no allegation in this case that Plaintiff is unable to seek further enforcement of the writ of mandamus in state court.  Indeed, Michigan law provides a specific remedy for violations of mandamus orders.  *See* Mich. Comp. Laws § 600.1144.  The issuance of the writ of mandamus does not convert Kegebein's actions into constitutional violations and, if Plaintiff desires to seek further enforcement of the writ, he should seek such enforcement in state court.  Therefore, counts I and II are dismissed for failure to state a claim.

Plaintiff's third claim is likewise subject to dismissal under 28 U.S.C. § 1915.  In his third claim, Plaintiff alleges that Kegebein's conduct leading up to the mandamus proceeding amounted to First Amendment retaliation.  The claim recounts Plaintiff's litigious history in Michigan state courts and describes Kegebein's alleged role in Plaintiff's 1997 conviction for uttering and publishing.  *See* Mich. Comp. Laws § 750.249.  The overall tenor of the claim is that this latter conviction amounted to First Amendment retaliation.

Plaintiff cannot use a § 1983 lawsuit to challenge his criminal conviction.  In *Heck v. Humphrey*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

11

> expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into question by a federal
> court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372 (1994). Pursuant to this holding, this Court

"must consider whether a judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence; if it would, the complaint must be dismissed

unless the plaintiff can demonstrate that the conviction or sentence has already been

invalidated." *Id.*

To succeed in a First Amendment retaliation claim, Plaintiff would have to prove

that he engaged in protected speech. *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir.

2008). Although Plaintiff is entitled to voice his political opinion that the Constitution

prohibits states from making anything but gold and silver coins as tender for debts, he is

not entitled to commit crimes—uttering and publishing false financial transaction

devices—in promotion of this viewpoint. Insofar as Plaintiff claims that his conviction

amounts to First Amendment retaliation, his claim is barred.[9]  And beyond participating

in Plaintiff's criminal proceedings, it remains unclear from the complaint how Kegebein

engaged in First Amendment retaliation. Therefore, Plaintiff's third claim must be

---

[9]Plaintiff's conviction has not been reversed, expunged, declared invalid, or called
into question by the issuance of a writ of habeas corpus.

dismissed without prejudice.[10]  Because there are no remaining claims, Plaintiff's request

for an extension of time to perfect process is denied and his complaint is dismissed.

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss from the State of Michigan and Iris

Lopez is **GRANTED** and those defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Counts I and II as to Defendant Kegebein are

**DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Count III as to Defendant Kegebein is

**DISMISSED WITHOUT PREJUDICE**.

A judgment consistent with this opinion shall issue.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copy to:
Dean Stanley Hazel          Michael F. Murphy, A.A.G.
1028 N Monroe
Monroe, MI 48162

---

[10]Cases dismissed pursuant to Heck should be dismissed without prejudice so that plaintiffs may re-assert their claims if they obtain reversal or expungement of their convictions.  See *Hodge v. City of Elyria*, 126 Fed. Appx. 222, 223 (6th Cir. 2005).